# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIRSTEN TORNATORE, LINZE LUCAS and DANIELLE SAUERS, | DECISION AND ORDER PROVISIONALLY CERTIFYING A FAIR LABOR STANDARDS ACT COLLECTIVE ACTION CLASS |
| Plaintiffs, | |
| vs. | |
| GCI COMMUNICATONS, INC., | 14-CV-6049 CJS |
| Defendant. | |

## APPEARANCES

For the Plaintiffs:	Michael A. Burger, Esq.
	Santiago Burger Annechino LLP
	693 East Avenue, Suite 101
	Rochester, NY 14607

For the Defendant:	Edward P. Hourihan, Jr., Esq.
	Katherine McClung, Esq.
	Bond Schoeneck & King PLLC
	350 Linden Oaks
	Rochester, NY 14625

## INTRODUCTION

**Siragusa, J.** Now before the Court is Plaintiffs' motion to conditionally certify a collective action class under the Fair Labor Standards Act. Motion to Certify Class under Rule 23 and Conditional Certification under FLSA, Feb. 4, 2014, ECF No. 5.[1] In a declaration filed on February 28, 2014, ECF No. 21, Michael A. Burger, Esq., filed for the

---

[1] On February 27, 2014, the Court approved the parties' stipulation withdrawing the portion of Plaintiffs' motion seeking class certification under Rule 23 (without prejudice to renewing it after discovery), extending the 120-day time period for filing a motion for class certification, allowing Plaintiffs to file a revised proposed Fair Labor Standards Act ("FLSA") Expedited Notice on or before February 28, 2014, setting a briefing schedule for Plaintiffs' motion to conditionally certify pursuant to FLSA (to stop the limitations clock), and setting oral argument on the motion to conditionally certify, pursuant to the FLSA, for March 17, 2014 at 2:00 pm. Stipulation and Order, Feb. 27, 2014, ECF No. 19.

Court's consideration an FLSA notice,[2] consent form, information sheet and envelopes, all in support of Plaintiffs' motion to conditionally certify the collective action class. Mr. Burger also stated that Defendants did not agree with the language in the proposed FLSA notice.

## BACKGROUND

In a declaration filed on February 4, 2014, ECF No. 6, Mr. Burger contends that Defendant did not pay overtime, failed to pay employees for time they actually worked both inside and outside the office, and did not keep reliable time records for payroll purposes. *Id.* ¶¶ 4–5. Mr. Burger further states that his law firm's investigation has led him to conclude that the named plaintiffs will adequately represent the interests of other class members. He also indicates that Plaintiffs' counsel are experienced in employment law and complex litigation and can adequately represent the class. Included in Mr. Burger's papers are declarations from the named plaintiffs: Kirsten Tornatore, Linze Lucas and Danielle Sauers. In their memorandum of law, filed on February 8, 2014, ECF NO. 12, Plaintiffs argue that they have presented more than the minimal showing required and, therefore, notice of the FLSA action should be sent to other employees, and, further, that the proposed FLSA notice is fair and adequate.[3]

Defendant, in its opposition to notify the potential FLSA claimants, filed a memorandum of law on March 7, 2014, ECF No. 23, and a declaration by Katherine S. McKlung, Esq., ECF No. 22. Attached to Ms. McKlung's declaration is Defendant's proposed notice and consent form should the Court decide, over Defendant's opposition, to

---

[2] The proposed FLSA notice filed on February 28, 2014, replaces the notice contained in the papers attached to Mr. Burger's declaration filed on February 4, 2014, ECF No. 6.

[3] Although the memorandum also addresses certification as a class under Rule 23, pursuant to the parties' stipulation, discussed above, the Court will not at this time address Rule 23 certification.

allow the FLSA notice. For the Court's convenience in comparing Defendant's proposed notice and claim form with Plaintiffs', Ms. McKlung included a redlined copy. Therefore, it is now the Court's duty to determine whether to provisionally certify an FLSA collective class, and if so, what notice should be given.

## STANDARD OF LAW

The FLSA provides in pertinent part as follows:

> An action to recover the liability prescribed [under the FLSA] may be maintained against any employer (including a public agency) in any Federal or State court[4] of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C.A. § 216 (2014). As the Second Circuit held in *Myers v. Hertz Corp.,* 624 F.3d 537, 554 (2d Cir. 2010) (footnote omitted):

> Although they are not required to do so by FLSA, district courts "have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 169, 110 S. Ct. 482, 107 L.Ed.2d 480 (1989). . . .
>
> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. *See, e.g., Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1258–62 (11th Cir. 2008); *Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (Lynch, J.); *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.). The court may send this notice after plaintiffs make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Sbarro,* 982 F. Supp. at 261. In a FLSA

---

[4] The Supreme Court held a portion of this statute unconstitutional in *Alden v. Maine*, 527 U.S. 706, 711 (1999) ("We hold that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts.").

> exemption case, plaintiffs accomplish this by making some showing that "there are other employees ... who are similarly situated with respect to their job requirements and with regard to their pay provisions," on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme. *Family Dollar,* 551 F.3d at 1259. The "modest factual showing" cannot be satisfied simply by "unsupported assertions," *Dybach v. State of Fla. Dep't of Corrections,* 942 F.2d 1562, 1567 (11th Cir.1991), but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* "similarly situated" plaintiffs do in fact exist, *see Sbarro,* 982 F. Supp. at 261. At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action may be "de-certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice. *See, e.g., Family Dollar,* 551 F.3d at 1261; *Hipp,* 252 F.3d at 1218.

*Myers*, 624 F.3d at 555. Only employees who are exempt from the FLSA's provisions need not be paid overtime for time worked greater than 40 hours. 29 U.S.C.A. § 207(a)(1) (2014) ("no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."). "An employee is considered exempt from the FLSA overtime requirements if he or she is 'employed in a bona fide executive, administrative, or *professional* capacity.' *Id.* § 213(a)(1) (emphasis added)." *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 596 (S.D.N.Y. 2011) (footnote omitted).

## ANALYSIS

In its memorandum of law opposing conditional certification of a collective action under the FLSA, Defendant states, *inter alia*:

4

> Indeed, in [Plaintiffs'] 28-page Memorandum of Law, they include only a single sentence explaining how other employees are similarly situated—"Defendant's policy was not to pay overtime to 'writers.'" (*See* Plaintiffs' Memorandum of Law, at 12). Plaintiffs' nearly identical, cookie-cutter Declarations do not provide any additional factual allegations pertinent to their Motion and only offer the unsupported assertion that "CGI did not pay me and other employees for all the time we worked." (*See* Tornatore Decl. ¶ 7, Lucas Decl. ¶ 8, Sauers Decl. ¶ 9). Courts in this Circuit routinely deny conditional certification in cases with such sparse factual records.

Def.'s Mem. of Law at 1, Mar. 7, 2014, [ECF No. 23](#) (footnote omitted). Defendant further argues that the named Plaintiffs seek conditional certification for a three-year period, but were only employed for a portion of that time; that they seek certification of a group that includes occupations other than "writer," though they themselves were only employed as writers and offer no further allegations concerning the other job titles; and that Plaintiffs seek to include those employees with jobs outside Rochester, but offer no factual allegations to support certification of such a group. *Id.* at 2. Defendant relies in part on the holding in *Sanchez v. JMP Ventures, L.L.C.*, No. 13 CIV. 7264 KBF, 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014), in which the district court denied conditional certification, stating that the sole declarant in support of the motion to conditionally certify the FLSA collective group:

> [R]epeatedly states, in substance, that these policies to which he was subjected in his seven months employed by defendants were the "common practice" at all Harry's Italian Restaurants since each restaurant's inception based on "observations" and "conversations" with other employees (whose first names he lists). (*Id.* ¶¶ 5, 7–15.)
>
> Plaintiff does not, however, provide *any* detail as to a *single* such observation or conversation. As a result, the Court does not know where or when these observations or conversations occurred, which is critical in order for the Court to determine the appropriate scope of the proposed class and notice process.

In contrast to the situation in *Sanchez*, Plaintiffs here have provided sufficient details to meet the minimal requirement to show that Defendant has other employees who are

5

similarly situated with respect to their job requirements and with regard to their pay provisions.

In her declaration, Feb. 4, 2014, [ECF No. 6-4](), Kirsten Tornatore states that: she was an hourly employee at Defendant CGI Communications, Inc. ("CGI"), from September 2012 until June 2013; as a "writer," her duties at CGI included speaking on the telephone, communicating with customers, potential customers and third party "partners," formatting, proofreading, rewording, fact-checking and editing assigned scripts for CGI, obtaining background factual research about a customer or target customer, and plugging relevant facts into a script to conform to CGI's parameters for word-count and content. She further states that as a writer, she generally worked a minimum of 40 hours per week, Monday through Friday, with an unpaid lunch hour. She alleges that she was told by her manager that she would be paid about $24,000 per year and that there was no overtime. *Id.* ¶ 6. She contends that CGI knew she was working over 40 hours per week based on her discussions with management, but that she did not receive pay for the overtime she worked, nor, she alleges, did other employees. *Id.* ¶ 7. She outlines one week, April 29 through May 3, 2013, in which she worked 48.5 hours for CGI, without overtime pay, "predominately for Defendant's benefit and at Defendant's express request." *Id.* ¶¶ 11, 14. She further explains that the computer system she used at CGI included a drop-down list of current and former "writers" and she estimated that the list contained between 50 and 100 names, all of whom, she asserts, were similarly situated to her "in terms of job duties and pay policies." *Id.* ¶ 17.

The declaration of named plaintiff Linze Lucas is similar to Tornatore's declaration. Lucas Decl., Feb. 4, 2014, [ECF No. 6-5](). Unlike Tornatore, Lucas was told that she

would be paid on an hourly basis, "but that there was no overtime pay as a matter of company policy." *Id.* ¶ 5. After several months, her status changed to permanent and she was told by CGI management she would be paid $11.00 per hour, but still without any overtime pay. *Id.* ¶¶ 6, 18. Lucas described the week of July 9 through July 15, 2013, in which she worked 47 hours, *id.* ¶ 11, and also described the computer system containing a list that she estimated had between 50 and 100 writers, *id.* ¶ 24.

Finally, the declaration of Danielle Sauers, Feb. 4, 2014, [ECF No. 6-6](), relates similar information to the declarations of her co-plaintiffs, and like Lucas, Sauers was paid on an hourly basis. *Id.* ¶¶ 6–7. She describes the week of December 3 through December 7, 2011, during which she worked 42.5 to 43.75 hours, which she states was common during the course of her employment. *Id.* ¶¶ 11–14. Finally, Sauers also describes the list of between 50 and 100 writers whom she alleges "would be, or would have been, similarly situated to [her] in terms of job duties and pay policies." *Id.* ¶ 19. Sauers also filed a reply declaration, Mar. 14, 2014, [ECF No. 24-1](), in which she provided further details about Defendant's pay policies. She states in that declaration that she habitually worked 42.5 hours per week without overtime compensation. Further, she related that when she first arrived, "Julie Richiuso, the HR Director, showed [her] around. [Sauers] asked where the time card clock was and she said something like, 'There is no punching in.'" *Id.* ¶ 12. She also stated that Marissa Sangiacomo, Francis Broderick and Tim Banach, were fellow employees at CGI and also worked overtime without compensation.

All three declarants assert that they regularly worked overtime, were not paid for overtime work, and that defendant did not track the hours they worked through the use

of time sheets or time clocks. *See Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 307 (S.D.N.Y. 1998) (FLSA class certified where "hourly-paid employees at the 15 Ark Restaurants were paid fixed rates regardless of the number of hours actually worked, that they were not paid overtime compensation even though they regularly worked more than 40 hours per week, and that the 15 Ark Restaurants did not use time clocks or sign-in sheets or any other system to keep track of the actual number of hours they worked."). In view of the "low standard of proof" and that the "purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist," *Myers*, 624 F.3d at 554, the Court will provisionally certify the FLSA collective group.

Turning now to the language of the notice, the Court will adopt the notice provided by Plaintiffs, but with those modifications recommended by Defendant as detailed in the record by the Court. In order to do so, the Court must describe the class of persons to be notified and the dates the notification will cover. As for the dates, Tornatore worked from September 2012, until June 2013, Lucas from August 8, 2011, until November 20, 2012, and Sauers from August 8, 2011, until February 24, 2012. The effective period covered is from the earliest to latest, with other periods between those two dates overlapping the dates during which the three named plaintiffs were employed: August 8, 2011, until May 30, 2013.[5] As for a description of the certified FLSA collective class, it is to include all persons during that period that held the title of "writer."

## CONCLUSION

For the foregoing reasons, the Court provisionally certifies the FLSA collective class as all those employed by CGI as "writers" during the period beginning on August

---

[5] Tornatore does not specify which date in June she left CGI, and "June" in her sentence is preceded by the preposition "to" meaning until June 2013, which implies that she stopped working on May 30, 2013.

8, 2011, until May 30, 2013.

Plaintiff is directed to modify the proposed Notice as discussed in Court and submit the final Notice to the Court for its approval. Defendant is directed to provide to Plaintiffs the names and contact information[6] for potential class members within fifteen days of the date of this Decision and Order. Further, Defendants are directed to post the Notice in conspicuous locations at all CGI locations where those who fit the class description work.

DATED:   April 10, 2014
           Rochester, New York

                                      /s/ Charles J. Siragusa
                                      CHARLES J. SIRAGUSA
                                      United States District Judge

---

[6] Contact information would include employees' names, last known U.S. Postal and email addresses, work locations and dates of employment.